**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DYLAN CROSS<br><br>v.<br><br>HYPERWATER INC.; CONSTRUCTIONBEVY, INC.; and LEE BLAYLOCK | Case No. 3:26-cv-3925<br><br>Jury Trial Demanded |

# ORIGINAL COMPLAINT

## SUMMARY

1. Dylan Cross (Cross) brings this action to recover unpaid wages, treble damages, and other relief from HyperWater Inc. (HyperWater), ConstructionBevy, Inc. (ConstructionBevy), and their founder and Chief Executive Officer, Lee Blaylock (Blaylock) (together, Defendants), under the Massachusetts Wage Act, M.G.L. c. 149, §§ 148, 148A, 148B, and 150, and the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151, §§ 1, 1A, 1B, and 20.

2. From October 2024 through May 2026, Cross worked full time for HyperWater from his home in Massachusetts, leading HyperWater's application engineering team, building and deploying HyperWater's software product, and reporting daily to Blaylock.

3. HyperWater and Blaylock repeatedly promised Cross a salary in exchange for his continued full-time work.

4. On September 15, 2025, Blaylock agreed in writing to a specific payment schedule of $10,000 per month, increasing to $15,000 per month beginning November 2025, plus a $10,000 bonus. Cross accepted. HyperWater did not honor the agreement.

5. Cross was HyperWater's employee. Under Massachusetts law, HyperWater owed him timely payment of all wages he earned, at least the minimum wage for every hour he worked, and

overtime for every hour over 40 in a workweek. HyperWater paid him none of these things on time, and many of them not at all.

## Jurisdiction and Venue

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Cross is a citizen of Massachusetts. Cross is domiciled in Worcester County, Massachusetts, where he resides.

8. HyperWater is a citizen of Delaware and Texas. HyperWater is incorporated under the laws of the State of Delaware and maintains its principal place of business in Dallas, Texas, where Blaylock and HyperWater's other officers direct, control, and coordinate its activities. 28 U.S.C. § 1332(c)(1).

9. ConstructionBevy is a citizen of Delaware and Texas. ConstructionBevy is incorporated under the laws of the State of Delaware and maintains its principal place of business in Dallas, Texas, where Blaylock directs, controls, and coordinates its activities. 28 U.S.C. § 1332(c)(1).

10. Blaylock is a citizen of Texas. Blaylock is domiciled in Dallas County, Texas, where he resides.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over HyperWater and ConstructionBevy because each maintains its principal place of business in Texas, is managed and controlled from Texas, and conducts substantial business in Texas; ConstructionBevy is also registered to do business in Texas.

13. This Court has personal jurisdiction over Blaylock because Blaylock resides in and is domiciled in Texas.

14. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) because all Defendants reside in Texas and each Defendant resides in this District. 28 U.S.C. § 1391(b)(1), (c)(1)–(2), (d).

15. Venue is also proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Cross's claims occurred here. Blaylock directed Cross's work, decided whether, when, and how much Cross would be paid, made or withheld each payment, agreed to the September 15, 2025 compensation schedule, and terminated Cross's employment from Dallas, Texas, where HyperWater and ConstructionBevy are managed and controlled.

## PARTIES

16. Cross is an individual residing in Worcester County, Massachusetts. At all relevant times, Cross performed his work for Defendants from Massachusetts.

17. HyperWater Inc. (also known as HyperWater, LLC and HyperWater.ai) is a Delaware corporation with its principal place of business in Dallas, Texas. HyperWater is not registered with the Texas Secretary of State. HyperWater may be served with process through its Chief Executive Officer, Lee Blaylock, at 5238 Edmondson Ave., Dallas, TX 75209, or wherever he may be found.

18. ConstructionBevy, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. ConstructionBevy is registered and in active status with the Texas Secretary of State. ConstructionBevy may be served with process through Lee Blaylock, at 5238 Edmondson Ave., Dallas, TX 75209, or wherever he may be found.

19. HyperWater and ConstructionBevy are a single integrated enterprise operated by Blaylock. Blaylock co-founded ConstructionBevy in or about 2022 as a Dallas-based online marketplace for commercial construction bidding and is its Chief Executive Officer. HyperWater

develops and sells the same construction-bidding product, under the same leadership, with the same personnel, customers, and investors.

20. Throughout Cross's employment, Blaylock and HyperWater's operations personnel conducted HyperWater's business from constructionbevy.com email addresses, and HyperWater's May 21, 2026 termination notice to Cross directed him to communicate with Blaylock and HyperWater's operations manager at constructionbevy.com addresses.

21. In the final weeks of Cross's employment, Blaylock announced that HyperWater would operate under the ConstructionBevy name, and HyperWater's website, hyperwater.com, now identifies the business as ConstructionBevy.

22. HyperWater and ConstructionBevy share common ownership, common management, centralized control of labor relations, and interrelated operations, and each is the alter ego, agent, and continuation of the other.

23. ConstructionBevy is also the successor to HyperWater's business, having assumed HyperWater's name, product, personnel, customers, and goodwill with notice of Cross's claims. HyperWater and ConstructionBevy are therefore jointly and severally liable, as Cross's employers, for the wages and other amounts alleged herein.

24. Cross refers to HyperWater and ConstructionBevy together as the Company.

25. Lee Blaylock is an individual residing in Dallas County, Texas. Blaylock is the founder and Chief Executive Officer of HyperWater and ConstructionBevy. Blaylock may be served with process at 5238 Edmondson Ave., Dallas, TX 75209, or wherever he may be found.

26. At all relevant times, Blaylock hired and fired HyperWater's workers, including Cross.

27. Blaylock supervised and controlled Cross's work schedules and conditions of employment.

28. Blaylock determined the rate and method of Cross's pay.

29. Blaylock maintained (or failed to maintain) Cross's employment records.

30. Blaylock personally decided whether, when, and how much Cross would be paid, and personally paid Cross from his own accounts.

31. Blaylock is an "employer" of Cross within the meaning of the Massachusetts Wage Act, which provides that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." M.G.L. c. 149, § 148. Blaylock is the president and Chief Executive Officer of, and has the management of, both HyperWater and ConstructionBevy.

32. Blaylock is individually liable for the Massachusetts Wage Act and Minimum Fair Wage Law violations alleged herein. See M.G.L. c. 151, §§ 1B, 20.

## FACTS

### HYPERWATER RECRUITS CROSS FOR A FULL-TIME ENGINEERING POSITION

33. HyperWater develops and sells a software application that helps general contractors and subcontractors manage construction bids and invitations to bid.

34. On October 28, 2024, Cross began working for HyperWater.

35. HyperWater issued Cross a company email address (dcross@hyperwater.ai), added him to its Slack workspace, and gave him administrative access to its GitHub repositories, Amazon Web Services account, Jira project management system, and other company systems. HyperWater's own personnel roster listed Cross as "W2 Boston."

### HYPERWATER CONTROLS EVERY ASPECT OF CROSS'S WORK

36. From October 2024 through May 2026, Cross worked full time and exclusively for HyperWater as the lead engineer of its application team.

37. Cross's duties included writing, testing, and fixing code for HyperWater's software product according to specifications and priorities set by Blaylock; reviewing and merging other developers' code; running scheduled production releases and deployments; maintaining HyperWater's

cloud accounts, source-code repositories, and third-party software subscriptions; assigning and tracking tickets in HyperWater's sprint and ticketing system; posting a daily written status report before 10:00 a.m.; relaying Blaylock's instructions to HyperWater's developers and reporting their progress back to him; responding to customer bug reports; and applying customer account credits in the amounts Blaylock specified.

38. Blaylock supervised and directed Cross's work on a daily basis.

39. For example, Blaylock required Cross to post a written "standup" report every business day before 10:00 a.m.

40. Blaylock also required Cross to report absences, booked and paid for Cross's business travel, and required Cross to work nights and weekends to meet HyperWater's release deadlines.

41. Cross regularly worked more than 40 hours in a workweek for HyperWater.

42. Cross typically worked approximately 45–65 hours per week, including regular evening and weekend work on production releases, bug fixes, and team meetings that frequently ran past 8:00 p.m. Eastern Time.

43. Cross was economically dependent on HyperWater.

44. Cross made no capital investment in HyperWater's business.

45. Cross had no opportunity for profit or loss based on his own managerial skill and performed the core service HyperWater exists to sell.

## DEFENDANTS FAILED TO PAY CROSS MINIMUM WAGE

46. Defendants paid Cross nothing from October 28, 2024 through December 31, 2024.

47. Defendants paid Cross nothing in February or March 2025.

48. Defendants never paid Cross overtime compensation at one and one-half times his regular rate for hours worked in excess of 40 in a workweek.

49. Defendants did not pay Cross a predetermined salary, on a weekly or less frequent basis, that was not subject to reduction based on the quality or quantity of his work or on HyperWater's finances.

50. Defendants therefore did not pay Cross on a salary basis, and no exemption from the overtime requirements of M.G.L. c. 151, § 1A applies to him.

## Defendants Failed to Pay Cross His Salary

51. Throughout Cross's employment, Blaylock induced Cross to continue working full time by promising that HyperWater would pay him a salary.

52. On September 15, 2025, Blaylock offered to pay Cross a $10,000 monthly salary.

53. Cross accepted Blaylock's proposed salary and continued working for Defendants.

54. In reliance on the September 15, 2025 agreement, Cross did not seek other employment and continued to work full time for HyperWater for more than eight additional months.

55. HyperWater did not pay Cross in accordance with the September 15, 2025 agreement. Instead, HyperWater continued to pay Cross sporadic, smaller sums while Blaylock repeatedly acknowledged the shortfall and promised to make it up.

56. HyperWater owes Cross the unpaid balance. These agreed-upon and earned amounts are wages within the meaning of M.G.L. c. 149, § 148.

## Cross Was Defendants' Employee Under Massachusetts Law

57. Under Massachusetts law, "an individual performing any service" for another "shall be considered to be an employee" unless the putative employer proves each of three things: (1) the individual is free from control and direction in connection with the performance of the service, both under his contract and in fact; (2) the service is performed outside the usual course of the business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

M.G.L. c. 149, § 148B(a). The Massachusetts test applies to Cross's claims under M.G.L. c. 149 and c. 151.

58. Blaylock controlled and directed Cross's work.

59. Cross was not engaged in an independently established business.

60. Cross worked exclusively for HyperWater, had no other clients or customers, held himself out to no one as an independent business, and was entirely dependent on HyperWater for his livelihood.

## CROSS SATISFIES THE PREREQUISITES TO SUIT

61. On October 21, 2026, the Attorney General issued Cross a letter authorizing him to pursue these claims in a private civil action. Cross has therefore satisfied the prerequisites to suit under M.G.L. c. 149, § 150 and M.G.L. c. 151, § 20.

## COUNT I

## VIOLATION OF THE MASSACHUSETTS WAGE ACT, M.G.L. C. 149, §§ 148, 148B, AND 150 (AGAINST ALL DEFENDANTS)

62. Cross realleges and incorporates all other paragraphs by reference.

63. At all relevant times, Defendants were Cross's "employers" within the meaning of M.G.L. c. 149, § 148, and Cross was their employee within the meaning of M.G.L. c. 149, § 148B.

64. The Wage Act requires employers to pay employees all wages earned within six days of the end of the pay period in which the wages were earned, and to pay an employee who is discharged all wages earned in full on the day of discharge. M.G.L. c. 149, § 148.

65. The Wage Act prohibits an employer from misclassifying an employee as an independent contractor and from failing to pay the wages and benefits to which the employee is entitled as a result. M.G.L. c. 149, § 148B.

66. The compensation Defendants agreed to pay Cross constituted "wages" within the meaning of the Wage Act because Cross earned them by performing the work Defendants required of him.

67. The minimum wages and overtime wages that Massachusetts law required Defendants to pay Cross likewise constituted wages earned within the meaning of the Wage Act.

68. Defendants violated the Wage Act by failing to pay Cross his earned wages within six days of the end of each pay period; by failing to pay Cross all wages earned on the day of his discharge; and by misclassifying Cross as an independent contractor.

69. Defendants' failure to pay Cross was not the result of a bona fide dispute, and payment after the filing of this Complaint is not a defense. M.G.L. c. 149, § 150.

70. Cross has satisfied the prerequisites to suit under M.G.L. c. 149, § 150, as alleged above.

71. Cross is entitled to recover his unpaid wages, mandatory treble damages for any lost wages and other benefits, prejudgment interest at 12% per annum, and his reasonable attorney's fees and costs. M.G.L. c. 149, § 150.

## COUNT II

### VIOLATION OF THE MASSACHUSETTS MINIMUM FAIR WAGE LAW, M.G.L. C. 151, §§ 1, 1A, 1B, AND 20 (AGAINST ALL DEFENDANTS)

72. Cross realleges and incorporates all other paragraphs by reference.

73. At all relevant times, Defendants were Cross's employers, and Cross was their employee, within the meaning of M.G.L. c. 151, § 2.

74. Massachusetts law requires employers to pay employees a minimum wage of not less than $15.00 per hour for every hour worked, M.G.L. c. 151, § 1, and overtime at one and one-half times the employee's regular rate for all hours worked in excess of 40 in a workweek, M.G.L. c. 151, § 1A.

75. Defendants violated M.G.L. c. 151, § 1 by paying Cross nothing for the workweeks from October 28, 2024 through December 2024, and by paying him less than $15.00 per hour for every hour worked in numerous additional workweeks through May 21, 2026.

76. Defendants violated M.G.L. c. 151, § 1A by failing to pay Cross overtime for any hour he worked in excess of 40 in a workweek. No exemption under M.G.L. c. 151, § 1A applies to Cross.

77. Cross has satisfied the prerequisites to suit under M.G.L. c. 151, § 20, as alleged above.

78. Cross is entitled to recover his unpaid minimum wages and overtime wages, mandatory treble damages, prejudgment interest, and his reasonable attorney's fees and costs. M.G.L. c. 151, §§ 1B, 20.

## COUNT III

### RETALIATION, M.G.L. C. 149, § 148A (AGAINST ALL DEFENDANTS)

79. Cross realleges and incorporates all other paragraphs by reference.

80. Massachusetts law prohibits an employer from discharging or in any other manner discriminating against an employee because the employee has complained about a violation of the wage laws or has asserted rights under them. M.G.L. c. 149, § 148A.

81. Cross engaged in protected activity by complaining to Blaylock, orally and in writing, that HyperWater was not paying him the compensation he had earned and had been promised, including in September, November, and December 2025, January 2026, and on May 2 and May 4, 2026.

82. Seventeen days after Cross's May 2 and May 4, 2026 written complaints, Defendants terminated his employment without a stated reason and, for the first time, labeled him an independent contractor.

83. Defendants terminated Cross because of his protected activity. The temporal proximity between Cross's complaints and his termination, the absence of any stated reason, and Defendants' contemporaneous praise of Cross's work support an inference of retaliatory motive.

84. Cross is entitled to recover his lost wages and benefits, treble damages, and his reasonable attorney's fees and costs. M.G.L. c. 149, §§ 148A and 150.

## JURY DEMAND

85. Cross demands a trial by jury on all claims so triable.

## RELIEF SOUGHT

WHEREFORE, Cross respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. All unpaid wages owed under the Massachusetts Wage Act and Minimum Fair Wage Law, including the compensation agreed to on September 15, 2025, minimum wages, and overtime wages, plus mandatory treble damages;

b. Lost wages and treble damages for Defendants' retaliation;

c. A declaration that Cross was Defendants' employee within the meaning of M.G.L. c. 149, § 148B;

d. Reasonable attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates, including prejudgment interest at 12% per annum under Massachusetts law; and

f. Such other and further relief as may be necessary and appropriate.

Date: November 9, 2026.

Respectfully submitted,

*/s/ Travis Gasper*

**Travis Gasper**
Texas State Bar No. 24096881
**GASPER LAW PLLC**

633 West Davis Street
Dallas, Texas 75208
(469) 694-1800
team@gasperplan.com

**LOCAL COUNSEL FOR PLAINTIFF**

**Carl A. Fitz**
Texas State Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**LEAD COUNSEL FOR PLAINTIFF**